**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                        **Case No. 3:25-CR-30004-NJR-1**

KEONTA CARNELL DOUGLAS,

       Defendant.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

In Illinois, it is unlawful to drive a car "with any objects placed or suspended between the driver and the front windshield which materially obstruct the driver's view." 625 ILCS 5/12-503(c-5). At the same time, Illinois law *prohibits* law enforcement from stopping or searching a car "solely on the basis of" a violation of this requirement. *Id.* Here, Officer Charles Tindall of the Sparta Police Department stopped a car in which Defendant Keonta Carnell Douglas was a passenger, purportedly because an object obstructed the driver's view. A subsequent search revealed Douglas's possession of a firearm, which led to the indictment in this case charging him with being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Douglas challenges Officer Tindall's stop and search under the Fourth Amendment because they were conducted in violation of section 5/12-503(c-5).[1]

---

[1] The Court and the parties agree that an evidentiary hearing is unnecessary because Douglas's motion raises a purely legal question. (Doc. 61).

B<span style="font-variant:small-caps">ACKGROUND</span>

On December 28, 2024, Douglas was driving through Sparta, Illinois, as a passenger in his friend's car. Officer Tindall "observed this vehicle to have some sort of object attached to the windshield blocking the view." (Doc. 50-1, p. 5). He initiated a traffic stop based on the windshield obstruction. (*Id.*). As Officer Tindall checked the driver's identification and insurance information, Officer Adam Diercks and his K9 partner performed an open-air sniff of the car. (*Id.*, p. 6). The K9 alerted on the vehicle, so Officer Tindall ordered the driver out of the car and told her he would search it. (*Id.*).

At this time, Officer Tindall overheard his colleague, Sergeant Zachary Hancock, "telling Douglas to quit reaching and to get his hands up." (*Id.*). The officers removed Douglas from the car and placed him in the backseat of Officer Tindall's patrol car. (*Id.*). Douglas told the officers that everything in the car was his and that he was on parole. (*Id.*). The officers searched the car and found a bag of Oxycodone pills, a firearm, and ammunition in the vicinity where Douglas had been sitting. (*Id.*).

Douglas was placed under arrest, waived his Miranda rights, and told Officer Tindall that the gun was his but that the pills were not. (*Id.*, p. 7). His indictment in this case for being a felon in possession of a firearm followed.

Illinois law, as noted, prohibits people from driving a car if an object materially obstructs the driver's view. 625 ILCS 5/12-503(c) & (c-5). Until recently, subsection 503(c) governed obstructions of all windows to the passenger compartment of a car. 625 ILCS 5/12-503(c) (2022). Objects that materially obstructed the driver's view were prohibited regardless of whether they were placed between the driver and the front windshield, rear

window, or side windows. *Id.* On January 1, 2024, the Illinois legislature amended section 5/12-503(c) to add subsection 503(c-5), which now governs material obstructions of a car's front windshield only.[2] 625 ILCS 5/12-503(c-5) (2024). Subsection 503(c-5), while still prohibiting objects that are placed "between the driver and the front windshield which materially obstruct the driver's view," provides that "[n]o motor vehicle, or driver or passenger of such vehicle, shall be stopped or searched by any law enforcement officer solely on the basis of a violation or suspected violation of this subsection." *Id.*

Douglas moves to suppress the evidence gathered during the stop because Officer Tindall violated subsection 503(c-5)'s prohibition on traffic stops based "solely" on a material windshield obstruction.

## DISCUSSION

The Fourth Amendment to the U.S. Constitution protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is reasonableness," which is "measured in objective terms by examining the totality of the circumstances." *United States v. Yang*, 39 F.4th 893, 899 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 754 (2023) (quoting *United States v. Price*, 28 F.4th 739, 748 (7th Cir. 2022), and *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (en banc)).

Douglas contends that because Officer Tindall violated section 12-503(c-5)'s prohibition on stops and searches based "solely" on material windshield obstructions, the evidence obtained from the stop must be suppressed. As he sees it, Officer Tindall's

---

[2] Subsection 503(c) continues to regulate obstructions between the driver and the rear and side windows.

violation of state law equates to a violation of the Fourth Amendment. The government disagrees. In its view, a long line of Supreme Court and Seventh Circuit cases rejects a core premise of Douglas's argument: that federal suppression law is sensitive to a state's restriction of police conduct. *See Virginia v. Moore*, 553 U.S. 164, 171 (2008); *California v. Greenwood*, 486 U.S. 35, 43 (1988); *United States v. Brewer*, 915 F.3d 408, 414 (7th Cir. 2019); *United States v. Castetter*, 865 F.3d 977, 979 (7th Cir. 2017); *United States v. Martin*, 399 F.3d 879, 881 (7th Cir. 2005); *United States v. Wilderness*, 160 F.3d 1173, 1175 (7th Cir. 1998); *cf. Gordon v. Degelmann*, 29 F.3d 295, 301 (7th Cir. 1994).

In *Virginia v. Moore*, local police stopped and arrested the defendant for driving on a suspended license. *Moore*, 553 U.S. at 167. When they searched him incident to arrest, they found crack cocaine and cash, leading to a prosecution for a drug offense under Virginia law. *Id.* Virginia law, however, did not permit the arrest. *Id.* The officers should have issued the defendant a summons and nothing more. *Id.* The defendant moved to suppress, arguing that because the officers violated state law in arresting him, the Fourth Amendment demanded the exclusion of evidence gathered incident to his arrest. *Id.* at 166. The Court disagreed. *Id.* at 176. The Fourth Amendment's prohibition against unreasonable searches and seizures, it explained, was not implicated when an officer has probable cause to believe that a crime—including a "minor" crime—is taking place. *Id.* at 171. When that happens, the officer's intrusion upon a person's privacy is "constitutionally reasonable," regardless of state law. *Id.* A state's decision to offer enhanced privacy protections does not enter the calculus because such "additional protections" are "exclusively . . . matters of state law." *Id.* (citing *Cooper v. California*,

386 U.S. 58, 87 (1967)); *see also Greenwood*, 486 U.S. at 43 (although states may provide greater search and seizure protections, Fourth Amendment analysis does not turn on particularities of state law). Thus, "when [s]tates go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same." *Moore*, 553 U.S. at 173.

The Seventh Circuit recognizes *Moore* for the principle that "violations of state law do not justify suppression in federal prosecutions." *Castetter*, 865 F.3d at 979. It has applied this principle on several occasions to reject arguments by criminal defendants that seek to leverage state law as a basis to exclude evidence in federal court. *See id.* at 978 ("States may decide as a matter of domestic law not to authorize their police to acquire information extraterritorially, but federal courts do not use the exclusionary rule to enforce state-law doctrines."); *Brewer*, 915 F.3d at 414 (denying motion to suppress where "[t]he Fourth Amendment's requirements were met, and the warrant's in-state limitation was, at most, a state-law problem."); *accord United States v. Felton*, --- F.4th ----,----, 2025 WL 3276929, at *2 n.2 (7th Cir. Nov 25, 2025). Indeed, *Moore* does not even appear to have broken new ground in the Seventh Circuit because the primacy of federal law on suppression issues in federal court has been established in this circuit for decades. *See e.g.*, *Martin*, 399 F.3d at 881; *Wilderness*, 160 F.3d at 1175; *United States v. Delaporte*, 42 F.3d 1118, 1119 (7th Cir. 1994). The Seventh Circuit's consistent rejection of state law as a basis to suppress evidence in federal court thus establishes the guiding principle that federal law—not state law—governs the inquiry under the Fourth Amendment. It also compels the conclusion here that Illinois law cannot modify the scope of the Fourth Amendment

to Douglas's benefit.

This brings us to the Seventh Circuit's decision in *United States v. Garcia-Garcia*, 633 F.3d 608, 610 (7th Cir. 2011). There, an officer stopped a car because he believed that an air freshener hanging from the rearview mirror violated a prior version of subsection 503(c) which, as noted, prohibited material obstructions of all windows in a car's passenger compartment, including the front windshield. *Id.* The defendant argued that the officer acted under a mistake of law because he believed that *any* obstruction violated the statute, even though only "material" obstructions were prohibited. *Id.* at 612. The court disagreed because the officer reasonably believed that the air freshener, based on its size and position vis-à-vis the driver, constituted a material obstruction. *Id.* at 615-16. "That reasonable belief is all that is needed to justify the warrantless stop." *Id.* at 616; *see also United States v. Smith*, 80 F.3d 215, 219-20 (7th Cir. 1996) (similar). Under *Garcia-Garcia*, then, Officer Tindall's warrantless stop was supported by his reasonable belief that the car carrying Douglas was violating subsection 503(c-5)'s prohibition on material windshield obstructions.

Douglas distinguishes *Garcia-Garcia* on the basis that it was decided before the Illinois legislature amended subsection 503(c) and, in doing so, prohibited officers from stopping a car for a material windshield obstruction. In his view, the amendment effectively overruled *Garcia-Garcia*'s holding that a material windshield obstruction supports probable cause under federal law. But this argument is unpersuasive for several reasons. First, federal suppression law is the lodestar in the Court's Fourth Amendment inquiry. Allowing subsection 503(c-5) to shape the contours of the Fourth Amendment is

irreconcilable with the Seventh Circuit's consistent rejection of similar arguments—both before and since *Moore*.

Another problem for Douglas is that the amendment did not legalize material windshield obstructions in Illinois. Material windshield obstructions are just as illegal today as they were before the amendment was enacted. And because the amendment preserved the prohibition on material windshield obstructions, the Court sees no justification to depart from *Garcia-Garcia*'s directive that "[w]hen a police officer reasonably believes that a driver has committed even a minor traffic offense [like a material windshield obstruction], probable cause supports the stop." *Garcia-Garcia*, 633 F.3d at 612.

Finally, it is not even clear whether Illinois law itself contemplates the suppression of evidence as a remedy for violations of subsection 503(c-5) by police. The amendment was passed to address the "pernicious reality" of "driving while black," whereby "police us[e] 'stereotypical thinking and hunches'" to justify traffic stops that disproportionately affect Black individuals. *People v. Carpenter*, 255 N.E.3d 938, 941 (Ill. App. Ct. 2024). The Illinois legislature, in its judgment, recognized this practice as a problem and passed the amendment to reduce unnecessary encounters between police and racial minorities. *Id.*; (Doc. 53-2, Exh. B to Defendant's Reply Brief (May 4, 2023 Press Release of Illinois Secretary of State Alexi Giannoulias)). But whatever the amendment's policy goals, it appears as though, in the two years since its enactment, no Illinois court has excluded evidence in a criminal prosecution because it was gathered in violation of subsection 503(c-5). The lack of clarity concerning subsection 503(c-5)'s remedial scope thus further

weakens Douglas's argument because federal courts are not in the business of shaping state law to begin with. *Delaporte*, 42 F.3d at 1119-20. And even if the suppression of evidence for violations of subsection 503(c-5) is the intended remedy, it would be one crafted by state law only. It would not provide a basis to broaden the Fourth Amendment protections available to criminal defendants in federal court. *See United States v. Tackett*, 486 F.3d 230, 234 (6th Cir. 2007) ("[I]f a department conducted an invalid inventory search under Tennessee law, but not under federal constitutional law, the defendant could potentially bring a civil action in state court, but not obtain a federal evidentiary exclusion.").

To close the loop, the Court offers a brief observation about its understanding of the firmness of the Seventh Circuit's rejection of arguments like the one Douglas raises here. The Ninth Circuit's decision in *United States v. Mota*, 982 F.2d 1384, 1388 (9th Cir. 1993), could be read to support Douglas's theory. There, officers arrested two individuals for operating a food cart without a business license and found counterfeit currency on them during a search incident to arrest. *Id.* at 1385. The defendants moved to suppress the counterfeit bills because California law did not authorize arrests for the "criminal infraction" of operating a food cart without a business license. *Id.* The court agreed because, in its view, "state law governing arrests is relevant to assessing the constitutionality of a search incident to [] arrest." *Id.* at 1387. And because California law did not provide legal authority for the arrest, the evidence gathered incident to that arrest was suppressed under federal law. *Id.* at 1389. The court concluded that "[g]iven the state's expression of disinterest in allowing warrantless arrests for mere infractions, . . .

a custodial arrest for such an infraction is unreasonable, and thus unlawful, under the
Fourth Amendment." *Id.*

Here, Illinois has expressed a similar "disinterest" in traffic stops based on a car's
material windshield obstruction. Thus, under *Mota*, it stands to reason that Officer
Tindall's stop and search may have violated the Fourth Amendment. But *Mota*'s
reasoning cannot carry the day for Douglas because the Seventh Circuit has apparently
rejected it. In *Gordon v. Degelmann*, 29 F.3d 295, 299 (7th Cir. 1994), the plaintiff was
arrested for trespassing at the house he shared with his partner. In a subsequent civil suit,
he argued that because Illinois law afforded him the right to a hearing before being
forcibly removed from a home in which he claimed a legal right, the officers violated the
Fourth Amendment by arresting him without a hearing. *Id.* The court disagreed because
the arresting officer followed all procedures under *federal* law to justify the arrest: he
observed what he believed was the plaintiff criminally trespassing and arrested him on
that basis. *Id.* at 301. The fact that the officer did so without a hearing required by state
law had no bearing on the reasonableness of the arrest under the Fourth Amendment. *Id.*
The plaintiff's Fourth Amendment theory was untenable, the court found, because
"[s]carcely a month goes by that the Supreme Court does not reject another permutation
on the theme that, by violating state law, state employees violated the Constitution."
*Id.* at 300. "In determining whether there has been an unreasonable search and seizure by
state officers, a federal court must make an independent inquiry. The test is one of federal
law, neither enlarged by what one state court may have countenanced, nor diminished
by what another may have colorably suppressed." *Id.* (quoting *Elkins v. United States*, 364

U.S. 206, 223-24 (1960) (citation modified)). After offering these observations, the court cited *Mota* as *contrary* authority to its holding. *Id.* In doing so, the court appeared to reject *Mota*'s theory of the relevance of state law in a Fourth Amendment analysis. And, as the authorities above make clear, the Seventh Circuit has since faithfully applied this principle many times. *Cf. United States v. Ames*, No. TH 02-010-CR-01-T/L, 2003 WL 1903373, at *7 (S.D. Ind. Jan. 27, 2003) (recognizing *Mota* as an outlier).

 *Gordon*, of course, is binding on this Court, as are *Brewer*, *Castetter*, and *Martin*. These cases, along with *Moore* and *Greenwood*, reject the premise that reasonableness under the Fourth Amendment turns on the idiosyncrasies of state law. That is why section 5/12-503(c-5)'s prohibition on traffic stops for material windshield obstructions cannot help Douglas here. "When a police officer reasonably believes that a driver has committed even a minor traffic offense, probable cause supports the stop." *Garcia-Garcia*, 633 F.3d at 612. Here, Officer Tindall observed what he believed was a material windshield obstruction and initiated a traffic stop. Although Illinois law may have precluded him from stopping the car, federal law did not. Thus, the evidence gathered during this stop and the search that followed will not be suppressed.

### Conclusion

 For these reasons, Douglas's Motion to Suppress (Doc. 45) is **DENIED**.

 **IT IS SO ORDERED.**

 **DATED:  December 10, 2025**

           *Nancy J. Rosenstengel*

           _____

           **NANCY J. ROSENSTENGEL**
           **Chief U.S. District Judge**